MICHAEL BAILEY
United States Attorney
District of Arizona

MARK J. WENKER
Assistant U.S. Attorney
Arizona State Bar No. 018187
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
mark.wenker@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
|---|---|
| Plaintiff, | |
| v. | |
| $13,730.00 in United States Currency, | |
| Defendant *In Rem*. | |

Plaintiff United States of America brings this Complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"):

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit property to the United States pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.,* or is proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*

2. This is a civil action *in rem* to forfeit property to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) because it is property which constitutes or is derived from the proceeds traceable to a violation of 18 U.S.C. § 1952, interstate travel and use of the mail

or any facility in interstate commerce with the intent to distribute the proceeds of unlawful activity as defined in 18 U.S.C. § 1952(b).

3. This is a civil action *in rem* to forfeit property to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) because it is property involved in a transaction or attempted transaction in a violation of 18 U.S.C. § 1956, money laundering, with the intent to promote the carrying on of a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7) and 1961, including but not limited to distribution of a controlled substance, and is property which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity.

4. Venue and jurisdiction is based upon 21 U.S.C. § 881(j) and 28 U.S.C. § 1355(b) and § 1395 as acts and omissions occurred in the District of Arizona give rise to this forfeiture action. This Court has jurisdiction. 28 U.S.C. §§ 1345 and 1355, and 18 U.S.C. § 981(h).

## THE DEFENDANT *IN REM*

5. The defendant consists of $13,730.00 in United States currency (the "Defendant Property") seized by the United States Postal Inspection Service on May 29, 2020.

## FACTS

*Suspicious Parcel*

6. On May 27, 2020 Inspectors at the Phoenix Processing and Distribution Center identified a suspicious United States Postal Service ("USPS") Priority Mail Express parcel, bearing USPS tracking number EJ 357 304 299 US (the "Subject Parcel). The Subject Parcel was addressed to "13455 W. Canyon Creek Dr., Surprise, AZ 85374" with a return address of "Kincaid's Professional Painting, 647 Prentice, Toledo, OH 43605."

7. The Subject Parcel was a cardboard box wrapped in holiday wrapping paper that measured 12" x 11.5" x 5.25", weighed approximately 4 lbs., 2 oz., had metered postage in the amount of $69.50 affixed to it, and had a handwritten label.

2

8. The Subject Parcel was considered suspicious because it did not have a named recipient, had a handwritten label, and was coming from a drug demand area (Ohio) to a drug source area (Arizona).

9. Additional investigation by Inspectors showed that the sender's address was not associated with Kincaid's Professional Painting.

10. Research showed there was no forwarding address on file for the sender. Between June 11, and June 16, 2020, several attempts were made to conduct an address verification with the Post Office responsible for delivery to the return address. However, the attempts were unsuccessful.

11. A phone number listed on the Subject Parcel for the sender, 419-764-1968, was possibly assigned to a cell phone belonging to "Professional Ki." The address associated with the 419-764-1968 number, 241 E. Delaware Ave., Apt. 3, Toledo, OH 43608, was different than the Subject Parcel's sender address.

12. Investigation of the recipient phone number, 623-313-4457, showed it was possibly an active cell phone. It also showed that the phone number was associated with Adam Scofield and the address of 14618 W. Mauna Loa Ln, Surprise, AZ. This address was different than the recipient address.

13. No forwarding address was listed for the address of 14618 W. Mauna Loa Ln, Surprise, AZ. The postal carrier to this address said that Johnson & Scofield and Adam Scofield received mail at the address.

14. Based on training and experience, Inspectors know that the following are often indicators of drug traffickers using Express Mail to transport drugs and/or proceeds from the sale of controlled substances:

 a. The Express Mail parcel does not list an intended recipient name;

 b. The Express Mail parcel label was handwritten; and

 c. The parcel is either: i) destined for an area known to be a frequent destination point for controlled substances, having been mailed from an area known to be a source area for controlled substances; or ii) originated

       from an area known to be a frequent origination point for proceeds from the sale of controlled substances, having been mailed to an area known to be a destination area for proceeds from the sale of controlled substances; and

    d. Persons associated with the sender or recipient address, or both, have extensive criminal backgrounds involving drug trafficking.

15. Also based on training and experience, Inspectors know that drug traffickers often use the U.S. Mail to transport controlled substances and currency derived from the sale of controlled substances. Traffickers are aware that Priority Mail and Priority Express Mail are protected against inspection without a federal search warrant, can be tracked, have dispatch times and locations that can be controlled, and most importantly have standardized delivery schedules. Traffickers also are aware that delayed delivery of Express Mail is an indication that the mailing may have been compromised by law enforcement.

16. Based upon the lack of a recipient name, the handwritten label, the destination and origination points of the Subject Parcel, and the cell phone numbers having no association with the sender or recipient addresses, Inspectors found the Subject Parcel to be suspicious.

*Narcotics Canine Alert*

17. On May 27, 2020, Inspectors met with Mesa Police Department Canine Handler/Detective Dawn Haynes and her narcotics detection canine "Nicole."

18. Detective Haynes has been a police officer for 19 years. Nicole is a three-year old Belgian Malinois, who has been working narcotics detection for the Mesa Police Department since February 2020.

19. Nicole and Detective Haynes currently hold a national certification in narcotics detection given by the National Police Canine Association ("NPCA"). Nicole was last certified by the NPCA on March 22, 2020.

//

4

20. Nicole is trained to detect the odors of cocaine, marijuana, heroin, methamphetamine and their derivatives. Nicole alerts to the odor of currency when such currency has been in recent proximity to such narcotic substances.

21. Nicole is a sophisticated drug dog. *See United States v. $132,245.00 in U.S. Currency,* 764 F.3d 1055, 1059 (9th Cir. 2014).

22. Nicole has been trained to positively alert to the odors of narcotics, and/or currency, notes, documents or evidence bearing the presence of these odors, by laying down next to the item containing these odors, which is a "passive" alert.

23. Since working at the Mesa Police Department Nicole has had no less than 100 successful finds (both training finds and finds which have contributed to active investigations) of controlled substances and/or the proceeds from the sales of controlled substances.

24. At approximately 8:27 a.m. on May 27, 2020, Nicole gave a positive alert to the Subject Parcel as having the presence of one or more of the above-mentioned drug odors or their derivatives. Nicole positively alerted to the Subject Parcel by exhibiting a change of behavior and laying down next to it.

*Execution of Search Warrant*

25. Based upon the information listed above, Inspectors requested and received a search warrant for the Subject Parcel.

26. Upon execution of the search warrant on May 29, 2020, and after removing the holiday wrapping paper, Inspectors found the Subject Parcel to be a box for a small circular outdoor barbeque grill. Inside the box was a duffle bag, and inside the duffle bag a circular outdoor barbeque grill which contained two large rectangular-shaped bundles wrapped in painter's tape. Concealed within the painter's tape were multiple rubber-banded bundles of U.S. Currency totaling $13,730.00 (the "Defendant Property").

/ /
/ /

5

27. The Defendant Property was made up of the following denominations: Thirty-six $100 bills, forty-eight $50 bills, three-hundred and eighty-one $20 bills, and eleven $10 bills.

28. The most common denomination used in drug transactions is the $20 bill.

29. The Subject Parcel did not contain any notes, receipts, or instructions.

30. People transporting drugs or drug proceeds in parcels often secrete or conceal drugs or drug proceeds within tightly-wrapped bundles. Drug traffickers package items in this manner in an attempt to avoid the detection by trained narcotics canines.

31. When a legitimate business sends currency, or a private party sends a personal gift of currency, the money typically is accompanied with notes, letters, receipts, cards, or coupons.

32. The overwhelming majority of people conducting a business transaction find it much more reasonable, practical, and safe to use a financial institution when making payments. Such payments are made securely in the form of a wire transfer, a check, a money order, or a cashier's check. By contrast, a payment made by mail with cash is much less secure because it can be lost or stolen, leaving no recourse for the parties involved. Drug traffickers often mail cash, constituting proceeds of their illegal conduct, to avoid creating any banking or wire transfer records that would lead to their detection.

*Telephone Calls Regarding the Defendant Property*

33. Between June 1 and June 3, 2020, an individual who identified himself as "Don Kincaid" left six messages regarding the Subject Parcel. Don Kincaid ("Kincaid") provided a phone number of 419-764-1968.

34. On June 3, 2020, Inspection Service personnel returned the phone call and spoke with Kincaid. Inspection Service personnel identified herself and informed Kincaid the Inspection Service is a federal law enforcement agency. Kincaid stated his package did not contain anything illegal. He stated the money was "for bike parts" and was his "life

/ /

6

savings." He further stated he was going to "MoneyGram it" but did not once he found out how much money they charge.

35. Kincaid stated he has been saving money for three years. He said "I wrapped it like that because it was a gift." He said he was unable to find the receipt to get his $70 back "but that's the least of my worries."

36. Inspection Service personnel asked who the package was mailed to and he stated "Adam Scofield/K&D Cycles." He said that is where he gets all of his parts. When asked, he provided an address of 13455 Canyon Creek Dr., Surprise, AZ for Adam Scofield ("Schofield"). Kincaid said his address is 5001 South Ave., Lot 164 Toledo, OH 43615.

37. Inspection Service personnel asked how much money was in the package and he stated "About thirteen thousand. A little over thirteen thousand." He further stated he looked it up before he mailed it and it is not illegal.

38. Inspection Service personnel informed Kincaid that a trained narcotics detection canine had alerted on his package and it was subsequently opened with a federal search warrant. When asked if he could explain why a canine would alert on his package, he said "absolutely not." He added, "I wrapped it in painting tape. I own a painting business." When asked if he had ever been arrested, he stated he had been arrested for DUI's in the early 2000's. He was then asked if he has ever been arrested for drug violations. He stated "I didn't have a label for my prescription. I went to the pharmacy and got a copy of my prescription and it got dropped, so no."

39. Also on June 1, 2020, a male individual who identified himself as "Adam Scofield" called the Inspection Service and left a message regarding the Subject Parcel. He provided a phone number of 623-313-4457.

40. On June 3, 2020, Inspection Service personnel returned the phone call and left a message for Scofield.

//
//

7

41. Law enforcement research on Scofield revealed an Arizona driver's license which bore the address 14618 W. Mauna Loa Ln, Surprise, AZ. No forwarding address was on file.

*Additional Investigation*

42. A criminal history checks for Kincaid in Ohio revealed the following arrests:

- October 2019 – possession of drugs (disposition held) and drug abuse; obtain, possess or use of a controlled substance (convicted);
- October 2012 – possession of drugs (disposition held) and drug abuse (disposition held); and
- May 2004 – driving under the influence (disposition held) and driving under the influence alcohol/drugs (convicted).

43. A criminal history check for Scofield in Arizona revealed the following:

- January 2012 – aggravated assault-temporary disfigurement (guilty).

44. Drug traffickers often have criminal histories involving drugs or associate with persons who have criminal histories involving drugs or other violations.

45. Postal business records revealed four prior suspicious mailings, that originated in Toledo, OH, were delivered to the subject address between January 16, 2020 and May 8, 2020. The mailings were not intercepted by Postal Inspectors but are believed to have contained narcotics proceeds based on similar characteristics: origin, destination, address information, size, and weight.

46. On September 17, 2020, research was conducted through the Arizona Corporation Commission on the business, KD Cycles. The research revealed the business was registered with the State of Arizona on May 24, 2013 and listed a physical address of 13128 W. Foxfire Dr., Ste. 109, Surprise, AZ. Adam Scofield was listed as the registered agent.

/ /

47. On September 23, 2020, research was conducted through the Ohio Secretary of State on the business, Kincaid's Professional Painting and Powerwashing, LLC. There were no records found. A registered agent search was also conducted on Donald Kincaid. The research returned a record for an unrelated business that was registered with the State of Ohio in 1951.

48. One September 23, 2020, research was conducted on Kincaid to see if he had an Ohio driver's license, as well as, a list of vehicles registered in his name. Research revealed Kincaid does not possess a driver's license in Ohio due to him having numerous traffic violations resulting in convictions dating back to 1996. There were no vehicles registered in his name.

*Administrative Claim by Kincaid*

49. On August 26, 2020, the Asset Forfeiture Unit for the USPIS received an administrative claim to the Defendant Property by Kincaid's attorney Michael Stahl ("Stahl").

50. In the administrative claim Kincaid stated that the Defendant Property was a payment to his best friend of 30 years Adam Scofield. Kincaid said he and Scofield grew up together in Toledo, Ohio, and have been working together on building motorcycles for years. Kincaid said he was buying custom motorcycle parts from Scofield's business, KD Motorcycles, at 13260 W. Fox Dr., Surprise, AZ. Kincaid said he put the Defendant Property inside of a brand new motorcycle grill, to not only ensure its safekeeping while mailing it to Scofield, but as a surprise gift to his friend.

51. On September 18, 2020, the USPIS sent a follow-up letter to Stahl requesting additional information and documentation in regard to Kincaid's earlier administrative claim.

52. Kincaid was asked for a written statement, sworn to under the penalty of perjury, that described his interest in the Defendant Property, as wells as for documents and answers to the following questions:

9

    a. Explain why the package was not addressed to Adam Scofield or his business, KD Cycles. Explain why the package was not mailed to Mr. Scofield's business address;

    b. Explain why "Kincaid's Professional Painting" was listed as the sender on a package containing cash for the purchase of items not related to your business;

    c. Is Kincaid's Professional Painting and Powerwashing, LLC registered in the State of Ohio? If so, provide your Tax Identification Number (TIN) and Entity Identification Number (EIN);

    d. How long have you been operating Kincaid's Professional Painting and Powerwashing, LLC?

    e. Explain why cash was mailed instead of a financial instrument or wire transfer;

    f. Explain the reason the "signature required" service was waived for a parcel containing $13,730.00 in cash;

    g. Explain the manner in which the currency was packaged, including why it did not contain any identification or documentation. You stated in your claim correspondence "Donald packaged the $13,700 of U.S. currency inside a brand-new motorcycle grill…" However, the currency was wrapped in painter's tape and concealed inside of an outdoor BBQ grill – not a motorcycle grill;

    h. Provide a detailed invoice, including the quantity and retail price, for the motorcycle parts you were purchasing from Mr. Scofield;

    i. Provide documentation regarding the source of the currency; business and personal bank statements for the last six months and documentation showing withdrawal of the funds prior to mailing;

    j. Provide filed Federal income tax returns; business and personal, for the tax year 2019;

10

k. Explain why a trained narcotics detection canine alerted to the presence and/or odors of controlled substances on Priority Mail Express parcel EJ 357 304 299 US;

l. Have you or Adam Scofield ever been arrested for narcotic/drug violations? If so, when was the arrest(s) and what was the disposition(s)?

m. Have you mailed any other Priority Mail or Priority Mail Express items Mr. Scofield? If so, what was the nature of those mailings and what did they contain?

n. Explain why Adam Scofield did not file a Claim or submit a Petition for the seized currency; and

o. Provide current telephone numbers for Adam Scofield where he can be reached during normal business hours, in the event it is necessary for Postal Inspectors to interview him regarding the Subject Parcel.

53. Kincaid was also asked to provide a written statement, sworn to under the penalty of perjury, from Adam Scofield. The statement should describe Scofield's ownership interest in the seized property and include explanations for the following;

a. Explain why cash was mailed instead of a financial instrument or wire transfer;

b. Provide a detailed invoice, including the quantity and retail price for each item, for the motorcycle parts you were selling to Kincaid;

c. As part of your business, do you normally sell custom motorcycle parts?

d. Have you received any other Priority Mail or Priority Mail Express items from Kincaid? If so, what was the nature of those mailings and what did they contain? and

e. Have you mailed any Priority Mail or Priority Mail Express items to Kincaid? If so, what was the nature of those mailings and what did they contain?

/ /

11

54. Kincaid did not respond to the USPIS' request for additional claim information and documentation.

55. Inspectors found Kincaid's unwillingness to provide proof regarding the source of the Defendant Property, or to answer any additional questions regarding the Subject Parcel, and those associated with it, to be suspicious and indicative of a person trafficking in drugs and drug proceeds.

56. On September 23, 2020, the USPIS mailed Kincaid's attorney Stahl an acknowledgment letter notifying him of the acceptance of his administrative claim and that the matter had been referred to the United States Attorney's Office.

*Summary*

57. The following are some of the factors that show the Defendant Property was the proceeds of drug trafficking, was involved in drug trafficking and money laundering, and facilitated drug trafficking:

   a. The suspicious nature of the Subject Parcel (lack of recipient name, handwritten label, and destination and origination points);
   b. The alert to the Subject Parcel by a trained narcotics canine;
   c. The number of $20 bills;
   d. The suspicious nature of the Subject Parcel's contents (large amount of currency concealed in painter's tape with no instructions, notes, or receipts);
   e. The prior four similarly suspicious packages sent to the recipient's address during a five-month period from the same origination point;
   f. Kincaid's inability to provide a legitimate source for the Defendant Property;
   g. Kincaid's criminal history involving drug trafficking;
   h. Neither of the two phone numbers listed on the package were associated with the sender or recipient addresses found on the Subject Parcel;

      i. Kincaid's suspicious statement regarding putting the Defendant Property inside a motorcycle grill, not only to safely secure the cash, but to also give his friend a new motorcycle part as a present. This seemed odd to Investigators as the grill found in the Subject Parcel was a barbeque cooking grill (matching the barbeque grill box of the Subject Parcel) and not a motorcycle part.

      j. Kincaid's claim that he works on motorcycles to ride when he does not have any vehicles registered in his name or a driver's license because of his numerous traffic violations.

## FIRST CLAIM FOR RELIEF

The Defendant Property was furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, or is proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 et seq., and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

The Defendant Property constitutes or is derived from proceeds traceable to some form of specified unlawful activity, conducted and attempted to conduct a financial transaction, i.e., the movement of the proceeds of trafficking in controlled substances, with the intent to promote and carry on trafficking in controlled substances in violation of a violation of 18 U.S.C. § 1952, and therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## THIRD CLAIM FOR RELIEF

The Defendant Property is property involved in a transaction or attempted transaction in a violation of 18 U.S.C. § 1956, money laundering, with the intent to promote the carrying on of a specified unlawful activity as defined in 18 U.S.C. §§

1956(c)(7) and 1961, including but not limited to distribution of a controlled substance, and is property which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity, and therefore is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

## NOTICE TO ANY POTENTIAL CLAIMANT

If you assert an interest in the subject property and want to contest the forfeiture, you must file a verified claim that fulfills the requirements set forth in Supplemental Rule G. To avoid entry of default, a verified claim must be filed no later than thirty-five days from the date this Complaint has been sent in accordance with Supplemental Rule G(4)(b).

An answer or motion filed under Fed. R. Civ. P. 12 also must be filed no later than twenty-one days after filing the claim. The claim and answer must be filed in the United States District Court for the District of Arizona under the case number listed in the caption above and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

This notice provision does not provide you with any legal advice and is designed only to provide you with a general understanding of these proceedings. Any statements made in your claim or answer may be introduced as evidence against you in any related or future criminal case. You should consult an attorney to represent your interests in this matter, and note that a stay of proceedings may be available under 18 U.S.C. § 981(g)(2).

IF YOU ARE A VICTIM, and have sustained economic loss as a result of the crime(s) giving rise to this civil action, you may be entitled to petition for remission, mitigation, or restoration under Title 28, Code of Federal Regulations ("C.F.R."), section 9.2. In lieu of filing a Claim with the Court, you may promptly submit a letter outlining your interest in the property to the undersigned Assistant United States Attorney. Plaintiff will notify you when it has received your letter, and further instructions may be provided upon conclusion of this action. The United States Attorney General shall have sole responsibility for disposing of petitions for remission or mitigation with respect to property involved in a judicial forfeiture proceeding under 18 U.S.C. § 981(d) and 21

U.S.C. § 881(d). If your status as a victim is contested, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

IF YOU ARE A LIENHOLDER, it is the policy of the United States Attorney's Office to honor all claims received from legitimate titled lienholders as defined under 28 C.F.R. § 9.2. In lieu of filing a claim with the Court, you may send a letter to the undersigned Assistant United States Attorney outlining your interest in the property, including: (1) the amount presently owed on the lien; (2) a copy of the security agreement setting forth your interest; and, (3) whether the owner is in default. If your lien is sufficient, Plaintiff will notify you to verify receipt of your letter. In the event of forfeiture, and to the extent practicable, proceeds from the sale and disposition of the subject property will be remitted to you in satisfaction of the lien. As noted above, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

**PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that process of warrant *in rem* issue for the arrest of the Defendant Property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendant Property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted this November 19, 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

*S/Mark J. Wenker*
MARK J. WENKER
Assistant United States Attorney

# **VERIFICATION**

I, Andrea Brandon, verify and declare under penalty of perjury that, I am a Postal Inspector with the United States Postal Inspection Service, that I have read the foregoing Complaint for Forfeiture *In Rem* and know the contents, and that the matters contained in the Complaint are true to my own knowledge, except that those matters alleged upon information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case.

I verify and declare under penalty of perjury that the foregoing is true and correct. Executed on this 18th day of November, 2020.

(electronic signature)
Andrea Brandon
Postal Inspector
United States Postal Inspection Service

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

---

**Plaintiff**(s): **United States of America**

County of Residence: Maricopa

County Where Claim For Relief Arose: Maricopa

**Defendant**(s): **$13,730.00 in United States Currency**

County of Residence: Maricopa

Plaintiff's Atty(s):

**Mark J. Wenker , AUSA**
**40 N. Central Ave., Ste. 1800**
**Phoenix, Arizona  85004-4408**
**602 514-7500**

Defendant's Atty(s):

---

<u>II. Basis of Jurisdiction</u>:     **1. U.S. Government Plaintiff**

<u>III. Citizenship of Principal Parties</u>
**(Diversity Cases Only)**

Plaintiff:- **N/A**
Defendant:- **N/A**

<u>IV. Origin</u> :     **1. Original Proceeding**

<u>V. Nature of Suit</u>:     **625 Drug Related Seizure of Property 21 USC 881**

<u>VI.Cause of Action</u>:     **Forfeiture in Rem**

<u>VII. Requested in Complaint</u>
Class Action: **No**
Dollar Demand:
Jury Demand: **No**

<u>VIII. This case</u> **is not related** to another case.

**Signature:** <u>s/ Mark J. Wenker</u>

**Date:** <u>11/19/2020</u>

**If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.**

Revised: 01/2014